Dear Mr. Davis:
You have requested an opinion of the Attorney General relative to a lease agreement entered into between Nicholls State University (Nicholls) and Morrison's Hospitality Group (MHG) for MHG to operate Nicholls' campus food service.
It is my understanding from your request, accompanied by Nicholls' Invitation for Proposal (IFP), the MHG Proposal (Proposal), and the resulting Lease Agreement (Lease) that three proposals were submitted in response to the IFP. Two were rejected because they were not responsive, resulting in Morrison's being awarded the contract for services commencing May, 1993. The Lease provides that the IFP, the Proposal and the Lease itself, are all made part of the lease contract to the same extent as if incorporated in full.
You state that the Lease calls for renovations to the campus food service facilities to begin in the second year of its term. Due to management changes, MHG did not submit a timely renovation plan or a request for an increase in the meal ticket prices for the ensuing year. MHG requested several concessions, two of which were the meal ticket increase and a decrease in the commission rate applicable to meal tickets and gross receipts from all cash sales to be paid by MHG to Nicholls. Nicholls rejected the proposed meal ticket price increase. The university is presently considering the request for a decrease in the commission rate from 15% to 10% for a one-year period. You specifically ask whether this decrease is legally permissible.
In addition, you state that the Proposal contains a termination clause providing that, should there be a significant drop in enrollment figures or if the parties are unable to agree on the following year's meal prices, MHG could give 90 days' notice and terminate the lease at the end of the summer term for that year of operations. You ask whether this clause is binding on Nicholls.
We find the following provisions of the IFP to be material and relevant to the issues at hand:
 "LEASE TERMINATION: This lease may be terminated by Nicholls State or the lessee according to the cancellation provisions stated herein provided that adequate written notice has been served to the respective party.
 PURPOSE: This Invitation for Proposal (IFP) sets forth the requirements and specifications of Nicholls State University. The contents of this IFP and the proposal shall become contractual obligations if a lease ensues. Any resulting lease shall be governed under the laws of the State of Louisiana.
 OTHER: The University may enter into negotiations with one (1) or more proposers in an effort to arrive at an award determination. The resulting lease shall be based on the submitted proposal and the negotiations concerning it."
 LEASE PAYMENT: The successful lessee shall guarantee to Nicholls State University for the initial term of the lease, an annual payment of THREE HUNDRED THOUSAND DOLLARS ($300,000.00), PLUS fifteen percent (15%) commission payment on the total sales price of all meal tickets AND FIFTEEN PERCENT (15%) commission payment of all gross receipts from all cash sales including the fast food operations, guest feeding in the cafeteria, catering, conference feeding, concessions, and any other function where cash sales may take place.
 MISCELLANEOUS CONDITIONS: Commission on sales will be paid monthly on the 20th of the following month. A one percent (1%) per month charge will be assessed on all payments not received by the 20th of the month.
 LESSEE'S RIGHT TO TERMINATE: Lessee shall provide Nicholls State University ten (10) calendar days certified written notice if N.S.U. breaches any terms or conditions of the lease. The lessee shall set forth the alleged breach and demand compliance with the lease. Unless within ten (10) calendar days after receiving such notice, N.S.U. has not contested such alleged breach or such breach has ceased or N.S.U. has made arrangements to correct the alleged breach, the Lessee shall terminate the lease by giving thirty (30) calendar days written notice. Any lease cancellation shall be served by certified mail.
 UNIVERSITY'S RIGHT TO TERMINATE: In the following case, without prejudice to any other remedy it may have, the University shall have the right to terminate the lease without giving Lessee notice of cancellation:
1. Failure to furnish a satisfactory Performance Bond;
 2. Failure to commence operation of the food service within the time specified in the lease;
 3. The Lessee obtained the lease by fraud, collusion, conspiracy or other unlawful means;
4. The lease is found to be prohibited by law.
 In all other cases, whenever the Lessee is in default of any of its obligations under the lease, N.S.U. shall provide Lessee notice of the default by certified mail. If Lessee fails to correct the default within ten (10) calendar days of receipt of the notice, N.S.U. shall have the right, to be exercised at N.S.U.'s option and without prejudice to any other remedy N.S.U. may have, to terminate the lease by giving thirty (30) calendar days notice. Any such lease termination notice shall be given by certified mail. N.S.U. shall have the right, to be executed at N.S.U.'s option and without prejudice to any other remedy N.S.U. may have, to terminate the lease by giving thirty (30) calendar days notice, whenever the Lessee is in default of the contract and that kind of default was the subject of a notice of default as described in paragraph above, or whenever N.S.U. has given three (3) notices of default as described in the paragraph above, no matter what kinds of default are involved.
 BASIS OF PROPOSAL EVALUATION AND EVALUATION CRITERIA: . . . the award shall be made in the best interest of the University. From the total information required, determination shall be made of the proposer's managerial and operational ability and resources to serve the University. Only proposals from financially responsible organizations or individuals, as determined by the University, presently engaged in the business of food services shall be considered. Representatives from the University reserve the right to inspect the proposer's facilities and other operations under their management prior to award of this proposal.
 The University anticipates receiving CREATIVE AND INNOVATIVE PROPOSALS realistic in terms of the services required and identifying new approaches from University food services including delivery systems, facilities renovation, equipment requirements and program enhancements."
We find the following provisions of the Proposal to be material and relevant to the issues at hand:
 "It is Morrison's intent to maintain a mutually agreeable and beneficial program for the students, faculty, and staff at Nicholls State. With this concept in mind, we have prepared our proposal based upon both current and projected enrollment levels. If there is a significant drop in the enrollment figures, or if the company and the university are unable to agree on the following year's meal prices, then Morrison's could give 90 days' notice and terminate its lease arrangements with the University at the end of the summer term for that year of operations."
We find the following provisions of the Lease to be material and relevant to the issues at hand:
 WITNESSETH, that the owner and the Lessee, for the consideration hereinafter specified, agree as follows, that:
 1. Invitation for Proposal (IFP) containing instructions to proposers, specifications and conditions
 2. Accepted Proposal from Morrison's Hospitality Group dated April 29, 1993
* * *
 are all hereby made part of this contract to the same extent as if incorporated herein in full.
The Lessee agrees to:
* * *
 d) THE LESSEE SHALL GUARANTEE TO NICHOLLS STATE UNIVERSITY FOR THE INITIAL TERM OF THE LEASE, AN ANNUAL PAYMENT OF $300,000.00 TO BE PAID IN FOUR EQUAL INSTALLMENTS ON OR BEFORE JULY 1ST, OCTOBER 1ST, JANUARY 1ST, AND APRIL 1ST.
 PLUS 15% COMMISSION PAYMENT ON THE TOTAL SALES PRICE OF ALL MEAL TICKETS, AND 15% COMMISSION PAYMENT ON ALL GROSS RECEIPTS FROM ALL CASH SALES INCLUDING THE FAST FOOD OPERATIONS, GUEST FEEDING IN THE CAFETERIA, CATERING, CONFERENCE FEEDING, CONCESSIONS, AND ANY OTHER FUNCTION WHERE CASH SALES MAY TAKE PLACE."
With regard to your first question concerning the commission rate reduction, as previously noted, both the IFP and the Lease contain provisions under which MHG guarantees Nicholls, for the initial term of the lease, a 15% commission payment on the sale of all meal tickets and food. You have advised that the proposal currently under consideration by Nicholls to reduce the commission rate to 10% constitutes a 30% decrease in the commission rate structure which would result in a loss to the university in excess of $100,000.00. For the following reasons, it is the opinion of this office that the proposal to reduce the commission rate from 15% to 10% can not be legally accepted by Nicholls.
The IFP process of selection, like the laws regulating the public procurement and bidding procedures, is designed to garner proposals that, in this case, would best insure creativity and innovation to Nicholls' food service and maximize its commission receipts. Just as important are the underlying principles that the IFP process provide increased public confidence in the procedures followed, to insure the fair and equitable treatment of all persons who seek to transact business with the state. The process also provides safeguards for the maintenance of a system of quality and integrity.
Proposals submitted in response to the IFP were based on specifications which required a 15% commission. MHG's proposal was accepted because it met IFP specifications. The other proposals were rejected because they did not. In fact, one proposal was rejected because the proffer for the annual payment was $200,000.00, rather than the $300,000.00 payment called for in the specifications. Had a proposal for a 10%, rather than the 15%, commission been initially submitted, it certainly would have been legally unresponsive and non-conforming, and subject to rejection by Nicholls.
Further, the proposed rate reduction, and the magnitude of its impact on Nicholls, constitutes, in our opinion, a substantial modification to a previously selected bid which contravenes the unambiguous terms of the IFP and Lease as well as MHG's own proposal. To accept the reduction would be patently unfair to other potentially qualified bidders that might have submitted proposals at the reduced rate.
We further find that the proposed commission rate reduction is subject to constitutional challenge as a violation of ArticleVII, Section 14 of the Louisiana Constitution of 1974. Generally, the funds of the state or of any political subdivision thereof, may not be loaned or donated to or for any private individual. While certain exceptions exist to this proscription, under the facts presented, it is the opinion of this office that Nicholls' proposed acceptance of the lesser rate does not satisfy these exceptions and would, therefore, be a prohibited donation of funds. In accord, see Attorney General Opinion No. 92-151. We turn now to your second issue — the termination clause.
As previously noted, both the IFP and the Lease clearly stipulate that the provisions of the IFP and the accepted proposal from MHG are made a part and incorporated into the lease contract. A review of the clauses pertaining to contract termination quoted hereinabove reveal that there are three such clauses. We have carefully reviewed the provisions of all three documents and can find no language, whatsoever, which would give precedence to one termination clause over the others. In the absence of a ranking provision, all three clauses must be given equal weight and effect.
Therefore, it is the opinion of this office that the termination clause contained in MHG's proposal is legally binding on Nicholls. However, as per the clause, timely notice must be given.
Trusting this opinion answers your inquiry, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/bb
0366R
Mr. Michael G. Davis Director of Purchasing Nicholls State University P.O. Box 2052 Thibodaux, LA 70310
Date Received: 06-14-94
Date Released:
ROBERT E. HARROUN, III ASST. ATTORNEY GENERAL